IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL WELFARE FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, not individually but as Administrator of the Funds,<br><br>            Plaintiffs,<br>  v.<br>REA MASONRY, LLC., an Illinois limited liability company,<br><br>            Defendant. | Case No. 25-cv-11825 |

**DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT**

Now comes Defendant, REA MASONRY, LLC., by and through its Counsel, ALLOCCO, MILLER AND CAHILL, P.C., for its response to the Plaintiffs' Complaint. Defendant states as follows:

**COUNT I**

**(Failure to Submit Benefit Contributions)**

1.    Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, and 29 U.S.C. §185(a), 28 U.S.C. §1331.

**ANSWER:** Defendant admits the allegations in Paragraph 1.

2.    Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

**ANSWER:** Defendant admits the allegations in Paragraph 2.

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

**ANSWER:** Defendant admits the allegations in Paragraph 3.

4. Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

**ANSWER:** Defendant admits the allegations in Paragraph 4.

5. Defendant REA Masonry, LLC, (hereinafter referred to as "Company") is an Illinois limited liability company and at all times relevant did business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

**ANSWER:** Defendant admits the allegations in Paragraph 5.

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). At

all times relevant herein, the Union and the Company have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2021. (A true and accurate copy of the most recent Collective Bargaining Agreement which adopts and incorporates the various area-wide collective bargaining agreements and the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A).

**ANSWER:** Defendant admits the allegations in Paragraph 6.

7. The Funds have been duly authorized to serve as collection agents for the Union in that the Funds have been given the authority to collect from employer's union dues which should have been or have been deducted from the wages of covered employees. Further, the Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

**ANSWER:** Defendant admits the allegations in Paragraph 7.

8. The Pension, Welfare and Retiree Health and Welfare Declaration of Trust Agreement documents provide Trustees with the powers to formulate, establish and maintain collection procedures for collection of contributions and those actions, procedures and polices shall be binding upon all Contributing Employers.

**ANSWER:** Defendant admits the allegations in Paragraph 8.

9. The Funds' Amended and Restated Collection and Audit Policies and Procedures provides that in the event the Funds files suit against a Contributing Employer, any liquidated damages incurred by the Contributing Employer after the lawsuit is filed will be assessed liquidated damages at twenty percent (20%) of the contributions owed. Liquidated damages assessed against late paid contribution reports which were paid prior to a lawsuit being filed are assessed at 10% of report amount. This Collection and Audit Policies was adopted by the respective Trustees for the Pension, Welfare and Retiree Health and Welfare Funds.

**ANSWER:** Defendant admits the allegations in Paragraph 9.

10. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee.

**ANSWER:** Defendant admits the allegations in Paragraph 10.

11. Late-paid Pension, Welfare, Retiree Welfare and Training Fund report contributions are assessed interest at a rate of 12% from the date the contributions were due until the contributions are paid.

12. The Agreement and the Funds' respective Agreements and Declarations of Trust requires the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

**ANSWER:** Defendant admits the allegations in Paragraph 12.

13. The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

**ANSWER:** Defendant admits the allegations in Paragraph 13.

14. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company performed covered work during the months of March 2025 through August 2025 but failed to pay the Funds all required contributions. According to fringe benefit reports submitted but not paid the Company total $52,511.39 and are itemized by month as follows:

(a) failed to pay contributions in the amount of $23,918.85 for the month of March 2025 thereby depriving the Pension, Welfare, Retiree Welfare and Training Funds of information and income necessary to administer the Funds;

(b) failed to pay contributions in the amount of $17,008.61 for the month of April 2025 thereby depriving the Pension, Welfare, Retiree Welfare and Training Funds of information and income necessary to administer the Funds;

(c) failed to pay contributions in the amount of $2,439.99 for the month of May 2025 thereby depriving the Pension, Welfare, Retiree Welfare and Training Funds of information and income necessary to administer the Funds;

(d) failed to pay contributions in the amount of $4,368.36 for the month of June 2025 thereby depriving the Pension, Welfare, Retiree Welfare and Training Funds of information and

income necessary to administer the Funds;

(e) failed to pay contributions in the amount of $3,664.98 for the month of July 2025 thereby depriving the Pension, Welfare, Retiree Welfare and Training Funds of information and income necessary to administer the Funds; and

(f) failed to pay contributions in the amount of $1,110.60 for the month of August 2025 thereby depriving the Pension, Welfare, Retiree Welfare and Training Funds of information and income necessary to administer the Funds.

**ANSWER:** Defendant denies the allegations in Paragraph 14.

15. The Company's failure to pay its March 2025 through July 2025 fringe benefit reports resulted in 10% liquidated damages being assessed against the reports. Further, its late payment of its November 2024 through February 2025 fringe benefit reports resulted in liquidated damages being assessed against those reports. Accordingly, the Company owes $22,956.20 in accumulated liquidated damages on late-paid/unpaid fringe benefit reports.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16. The Company's actions in failing to submit timely payment of benefit contributions reports violates Section 515 of ERISA, 29 U.S.C. §1145.

**ANSWER:** Defendant admits the allegations in Paragraph 16.

## COUNT II

### (Failure to Submit Dues Contributions)

17. Plaintiffs re-allege paragraphs 1 through 16 of Count I as this Paragraph 17.

**ANSWER:** Defendant restates its answers to paragraphs 1 through 16.

18. Pursuant to agreement, the Funds have been duly designated to serve as collection

agents for the Union in that the Funds have been given the authority to collect from employer's union dues which have been or should have been deducted from the wages of covered employees.

**ANSWER:** Defendant admits the allegations in Paragraph 18.

19. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has failed to pay dues reports for the period of April 2025 through June 2025 totaling $1,523.03 plus ten percent (10%) liquidated damages.

**ANSWER:** Defendant admits the allegations in Paragraph 19.

20. The Company has failed to submit its October 2024 through March 2025 and July 2025 through August 2025 dues reports. The amount of those dues reports is unknown and the Company will be assessed ten percent (10%) liquidated damages on those reports.

**ANSWER:** Defendant admits the allegations in Paragraph 20.

## COUNT III

### (Breach of Labor Agreement- Failure to Post Bond)

21. The Funds re-allege and incorporate the allegations contained in paragraphs 1-16 of this Complaint.

**ANSWER:** Defendant restates its answers to Paragraphs 1 to 16.

22. Article IX of the Agreement provides all signatory employers shall maintain a surety bond in a form and amount satisfactory to the Union, but not less than $5,000.00 to guarantee the payment of wages, pension and welfare contributions.

**ANSWER:** Defendant admits the allegations in Paragraph 22.

23. The Funds, as a beneficiary of the Agreement, have been authorized by the Union to enforce the bond provision of the Agreement.

**ANSWER:** Defendant admits the allegations in Paragraph 23.

24. The form of the bond required by the Union is either a traditional surety bond back by an insurer or a cash bond.

**ANSWER:** Defendant admits the allegations in Paragraph 24.

25. In accordance with the Agreement and/or the Funds collection procedures and based upon the Company's workforce, the Company is required to post either a paper or cash bond in the amount of $5,000.00.

**ANSWER:** Defendant admits the allegations in Paragraph 25.

26. On or about September 16, 2025, the Funds advised the Company that it was in breach of the Agreement by failing to maintain a surety bond.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 26.

27. Pursuant to the Revised Surety Bond Policy adopted by the Laborers' Funds' Board of Trustees, the Company has 120 days to post a $5,000.00 bond or the bond requirement will be doubled to a $10,000.00 bond.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 27.

28. Under the terms of Agreement, if the Company fails to post the bond it is liable for all attorney fees and costs incurred in seeking to enforce the Agreement's bond provision.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 28.

29. Failure to post the $5,000.00 bond constitutes a breach of the Agreement, and places the Funds, Union and its members at risk that the obligation owed by the Company will be met in a timely fashion because the security required by the Agreement is not available.

**ANSWER:** Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 29.

                                                Respectfully submitted,

                                                REA MASONRY, LLC

                                  By:    /s/ Todd A. Miller_____

Attorneys for the Defendant:

Todd A. Miller (tam@alloccomiller.com)
Kathleen M. Cahill (kmc@alloccomiller.com)
Allocco, Miller & Cahill, P.C.
20 N. Wacker Drive, Suite 3517
Chicago, IL 60606
Ph: (312) 675-4325
Fx: (312) 675-4326

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record, hereby certifies that he electronically filed the attached, *Defendant's Answer to Plaintiffs' Complaint*, with the Clerk of the Court using the CM/ECF system on this 7th day of November 2025, which will send notice of such filings to the following:

G. Ryan Liska
Office of Fund Counsel
11465 W. Cermak Road
Westchester, IL 60154
rliska@chilpwf.com

/s/ Todd A. Miller

Attorneys for the Defendant:

Todd A. Miller (tam@alloccomiller.com)
Kathleen M. Cahill (kmc@alloccomiller.com)
Allocco, Miller & Cahill, P.C.
20 N. Wacker Drive, Suite 3517
Chicago, IL 60606
Ph: (312) 675-4325
Fx: (312) 675-4326

10